# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

MARC MANOR,                        :

          Plaintiff,        :

                                    Case No. 3:10CV0274

 vs.                               :

                                    District Judge Thomas M. Rose

MICHAEL J. ASTRUE,          :        Magistrate Judge Sharon L. Ovington
    Commissioner of the Social
    Security Administration,      :

          Defendant.        :

## REPORT AND RECOMMENDATIONS[1]

## I.     INTRODUCTION

Plaintiff Marc Manor sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ["DIB"] in December 2004, alleging disability since November 30, 2000. (Tr. 51-55). He claims to be disabled by fibromyalgia, irritable bowel syndrome ["IBS"], low testosterone, heart attack (Tr. 62-63), and depression. (Tr. 91).

After various administrative proceedings, Administrative Law Judge ["ALJ"] Thomas R. McNichols, II denied Plaintiff's DIB application based on his

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 17-27). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9) , the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and remand for payment of benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

Plaintiff was 27 years old on the date last insured, and thus was considered to be a "younger individual" for purposes of resolving his DIB claim. *See* 20 C.F.R. § 404.1563(c); (*see also* Tr. 70). He has a high school education and two associate degrees, with some additional college. *See* 20 C.F.R. § 404.1564(b)(4); (*see also* Tr. 68, 309). Plaintiff has past relevant work experience as a computer support technician and a computer repair technician. (Tr. 63, 73-87).

Plaintiff testified at the administrative hearing that he is unable to work due to symptoms of IBS. (Tr. 311, 315). He has a driver's license and drives

2

about once a month.  (Tr. 309).  Plaintiff testified that he does not get out of the house much and that the day of the hearing was the first time he had showered in three weeks.  (*Id.*).  He received two associate degrees in computer information systems from Sinclair Community College.  (*Id.*).  He was dismissed from Wright State University due to his health problems.  (*Id.*).

Plaintiff testified that he was dismissed from employment at NCR in 2000 for absenteeism and being unable to remain at his desk due to his need to use the bathroom for extended periods of time.  (Tr. 310).  He testified that on average he spent two to four hours in the bathroom each day and at times could spend as much as six to eight hours a day in the bathroom.  (Tr. 311).  He reported that the night before the hearing, he had slept two hours, was up for the next five hours in the bathroom, then went back to sleep for an additional two and one-half hours.  (*Id.*).

Plaintiff testified that three different gastroenterologists had been unable to determine the cause of his IBS.  (Tr. 312).  His primary care physician treated his IBS.  (*Id.*).  The gastroenterologists and his primary care physician had tried different tests and medications but had been unable to find a way to alleviate his symptoms.  (Tr. 313).  Plaintiff likened his condition to having food poisoning every day.  (Tr. 314).

3

Plaintiff also testified that he had suffered a heart attack in 2004 (Tr. 313-14), but that his cardiac condition did not affect his ability to work.  (Tr. 314). He had occasional chest pain, approximately every six months.  (*Id.*).  He denied any psychological problems.  (Tr. 315).  He stated that his IBS condition interrupted his sleep and caused him to feel exhausted much of the time.  (*Id.*).

Plaintiff testified that he had abdominal pain daily and that the pain typically fell in the four to six range on a scale of 10.  (Tr. 317-18).  He never had been hospitalized due to IBS.  (Tr. 317).  Plaintiff also testified that he was not taking any prescribed pain medication.  (Id.).  Although the aspirin he took for his heart condition could treat pain, he had to be careful concerning the amount of aspirin he took because it caused bleeding.  (*Id.*).

As to his activities of daily living, Plaintiff testified that he might sleep for part of an afternoon if he had difficulty sleeping the previous night.  (Tr. 325).  He would eat breakfast in the morning and then spend four to five hours in the bathroom. (Tr. 326).  After going to bed, he would wake up in the early evening or middle of the night due to feeling ill.  (*Id.*).  He might play video games for a couple hours each week.  (*Id.*).

Plaintiff estimated that he could walk no more than three-quarters of a mile or stand no more than one hour due to fatigue.  (Tr. 319-20).  He believed

that he could lift maybe 50 to 60 pounds.  (Tr. 320).  He reported being able to perform household chores, do the laundry, and shop when he had sufficient energy.  He was able to feed and dress himself.  (Tr. 322).  He did not go to church, visit friends or relatives.  (Tr. 323).  He saw his father once a month and communicated with friends through the internet.  (*Id.*).  He tried to mow the lawn occasionally.  (Tr. 324).

Vocational expert ["VE"] Brian L. Womer evaluated Plaintiff's past work and indicated that his prior computer support technician position would be considered skilled, light exertional level work.  (Tr. 330).  The VE further opined that Plaintiff's past computer repair technician position would appear to be in the skilled, medium exertional level work category.  (*Id.*).

The ALJ posed a series of hypothetical questions to the VE to determine whether jobs existed in the national economy in significant numbers that could be performed by an individual of Plaintiff's age, education and work experience, who could do medium work with no climbing of ropes, ladders or scaffolds; occasional postural activities; no exposure to hazards such as dangerous machinery or unprotected heights; being able to alternate between standing and sitting at one-hour intervals; being able to maintain concentration on a single task for no longer than 15 minutes; and having ready access to restroom facilities,

5

meaning no assembly line work and no exposure to the general public. (Tr. 330-32). Based on the hypotheticals posed by the ALJ, the VE opined that Plaintiff would be unable to return to any of his past relevant work. (Tr. 331). However, the VE proceeded to identify medium, light and sedentary unskilled positions, such as kitchen helper laundry worker, small parts assembler, injection mold machine tender, wire insulator and sprayer assembler, that Plaintiff could perform. (Tr. 331-32).

Plaintiff's counsel then posed other hypothetical questions to the VE, asking whether an additional limitation to simple repetitive tasks would affect the number of jobs. The VE responded that the number of medium jobs would be unaffected, but light jobs would be reduced to 3,000, and sedentary jobs to 500. Plaintiff's counsel next asked whether an employee's absence from work more than four days per month due to impairment or treatments would affect the number of jobs identified in the previous hypotheticals. (Tr. 337). The VE responded that an individual who was absent that often would not be able to maintain the above-listed jobs in competitive employment, and no jobs would remain. (*Id.*). Plaintiff's counsel followed up by inquiring about the impact of the need for four to eight restroom breaks per day, with each break lasting 10 to

15 minutes. The VE responded that such a restriction probably would prevent a person from being able to work. (Tr. 338).

The pertinent medical findings and opinions are summarized adequately by the parties in their briefs (Doc. # 8 at 2-7; Doc. # 9 at 2-5) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

## III. THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

### A. Applicable Standards

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see also Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

7

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  (*See* Tr. 18-19); *see also* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B.    <u>The ALJ's Decision</u>**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2005. (Tr. 19). The ALJ also found that Plaintiff had not engaged in substantial gainful activity from his alleged disability onset date of November 30, 2000, through his date last insured of September 30, 2005. (*Id.*).

The ALJ found at Step 2 that Plaintiff had the severe impairments of coronary artery disease status post myocardial infarction in 2004, and irritable bowel syndrome [IBS]. (*Id.*). The ALJ determined at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20).

At Step 4 the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ["RFC"] to perform medium work with the following restrictions: he could lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand and/or walk for six hours of an eight-hour day; and occasionally bend, squat, stoop, kneel, crouch, or crawl. (Tr. 20). Plaintiff could not climb ladders, ropes, or scaffolds. (*Id.*). He could not work in proximity to workplace hazards. (*Id.*). Plaintiff needed the opportunity to alternate between sitting and standing at one-hour intervals. (*Id.*). He was not required to maintain concentration on a single task for longer than 15 minutes at a time. (*Id.*). In

9

addition, Plaintiff required ready access to restroom facilities, *i.e.*, no assembly line work and no exposure to the general public.  (*Id.*).  The ALJ further found that, through the date last insured, Plaintiff was unable to perform his past relevant work.  (Tr. 25).  Considering his age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could have performed.  (*Id.*).  This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for DIB at any time from November 30, 2000, the alleged disability onset date, through September 30, 2005, the date last insured.  (Tr. 26).

## IV.  JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of*

10

*Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.     DISCUSSION

### A. The Parties' Contentions

The main issue in this matter is whether the ALJ's determination that

Plaintiff retained the RFC to perform medium work was supported by substantial evidence.  (Doc. #8 at 1).  Specifically, Plaintiff urges that the ALJ misapplied the standards governing medical opinion evidence by rejecting the November 2006 opinion of Rick Gebhart, D.O., his treating family practice physician.  (*Id.* at 12).  Plaintiff also contends that the ALJ erred in evaluating Plaintiff's pain, symptoms and credibility.  (*Id.* at 13).  Finally, Plaintiff argues that the ALJ failed to present a proper hypothetical to the VE.  (*Id.* at 20).

The Commissioner contends that substantial evidence supports the ALJ's decision.  (Doc. # 9).  Defendant argues that the ALJ appropriately declined to give controlling weight to the opinion of Plaintiff's family physician and reasonably explained his reasons for doing so.  (*Id.* at 7).  The Commissioner further argues that the ALJ properly assessed Plaintiff's credibility regarding his subjective complaints of pain.  (*Id.* at 11).  Finally, the Commissioner urges that the hypothetical question the ALJ asked the VE, and the corresponding answer on which the ALJ relied, were adequate and proper because they took into account all of Plaintiff's substantiated limitations.  (*Id.* at 14).

**B.** **Medical Source Opinions**

*1.* *Treating Medical Sources*

12

The treating physician rule, when applicable, requires an ALJ to place controlling weight on a treating physician's or psychologist's opinion rather than favoring the opinion of a non-examining medical advisor or a one-time examining physician or psychologist who testified before the ALJ. *Blakley*, 581 F.3d at 406; *see Wilson*, 378 F.3d at 544. A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Blakley*, 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). More weight generally is given to the opinions of examining medical sources than to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value, and under some circumstances can be given significant weight. *See infra*.

13

2.    _Non-Treating Medical Sources_

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180, at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id*. at **2-3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in Section 404.1527(d), including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1572(f); *see also* Ruling 96-6p at **2-3.

**C.    Analysis**

Plaintiff first relies on the opinions of Dr. Gebhart, his primary care physician. Plaintiff began treating with Dr. Gebhart in February 2004. (Tr. 279). On November 8, 2006, Dr. Gebhart reported that Plaintiff had Crohn's disease and elevated lipids (hyperlipidemia), and that his symptoms included diarrhea and cramps, sometimes for hours at a time. (Tr. 262). With respect to clinical

findings, Dr. Gebhart noted hyper bowel sounds. (*Id.*). A colonoscopy was negative. (*Id.*). Dr. Gebhart reported that Plaintiff's symptoms interfered with his attention and concentration frequently on some days and constantly on others. (Tr. 263). Dr. Gebhart opined that Plaintiff was incapable of performing even low stress jobs. (*Id.*). He also opined that Plaintiff could sit or stand for only 30 minutes at a time and walk for less than one block at a time due to his frequent need to use the restroom for as long as one to three hours. (*Id.*). According to Dr. Gebhart, Plaintiff would need four to eight bathroom breaks a day. (Tr. 264). Dr. Gebhart further opined that at that time, Plaintiff could lift up to 10 pounds occasionally, and could twist, stoop, crouch, squat, or climb occasionally. (Id.). Dr. Gebhart concluded that Plaintiff would miss work more than four days a month due to his impairments. (Tr. 265).

The ALJ rejected this opinion, recognizing that "Dr. Gebhart's opinion appears to be based on Mr. Manor's subjective complaints rather than examination findings or objective data." (Tr. 23). The ALJ further explained that he did not find Plaintiff's subjective complaints fully credible, and therefore gave less weight to Dr. Gebhart's opinion. (*Id.*).

In declining to apply controlling weight to Dr. Gebhart's opinion based on his omission of supporting objective medical evidence, the ALJ did not err as a

matter of law.  *See* 29 C.F.R. § 404.1527(d)(2).  A review of the form Dr. Gebhart

completed reveals that, as the ALJ recognized, Dr. Gebhart referenced no

objective medical evidence to support his opinions.  (*See* Tr. 262-65).  ALJs are

"not bound by conclusory statements of doctors, particularly where they are

unsupported by detailed objective criteria and documentation."  *Buxton v. Halter*,

246 F.3d 762, 773 (6th Cir. 2001); *see also McCoy ex rel. McCoy v. Chater*, 81 F.3d 44,

47 (6th Cir. 1995) (holding that ALJ reasonably discounted treating physician's

opinion where claimant's subjective complaints not supported by objective

findings).

Furthermore, the diagnostic medical evidence in the record indeed does

not support Dr. Gebhart's opinions.  For example, a colonoscopy performed on

July 26, 2001, revealed a polyp, internal hemorrhoids, and nonspecific

inflammation.  (Tr. 136-37).  A colonoscopy with a stomach biopsy in March 2002

indicated the presence of mild chronic inflammation and chronic gastritis.  (Tr.

132-35).  An upper gastrointestinal study with small bowel follow-through

examination in September 2003 revealed mild fecal retention and no obstruction

or segmentation.  (Tr.  145-46).  A repeat colonoscopy in October 2003 was

normal.  (Tr. 144).  In March 2005, gastroenterologist Lisa Dieruf, M.D.,[2] noted

---

[2]Referred to in the ALJ's decision as "Lisa <u>Stone</u>, M.D.," or "Dr. Stone." (*See, e.g.,* Tr. 22) (emphasis added).

that all diagnostic tests were normal or negative.  (Tr. 231-32).  No test results included in the record documented a cause for Plaintiff's reported symptoms.

The ALJ also noted that some of the specialists who treated Plaintiff had indicated that his reported symptoms were extraordinary for a diagnosis of IBS. (*See* Tr. 23).  For example, Dr. Stone described Plaintiff's symptoms as "awfully extreme" for IBS.  (Tr. 232).  Michael Gorsky, M.D., another gastroenterologist, reported that Plaintiff was "extremely symptomatic, much more so than I would expect from irritable bowel syndrome."  (Tr. 146).  Additionally, the ALJ noted that "[n]o treating source refers to Mr. Manor as having incapacitating or debilitating symptoms that would prevent his returning to the workplace, or has otherwise described Mr. Manor as 'totally and permanently disabled' by his impairments and complaints." (Tr. 24).  For all these reasons, the ALJ applied the correct legal criteria to Dr. Gebhart's opinions, and substantial evidence supports the ALJ's reasons for discounting those opinions.

For his second assignment of error, Plaintiff maintains that the ALJ erred in evaluating his pain, credibility, and subjective complaints pursuant to SSR 96-7. (Doc. #8 at 13-20).  Plaintiff asserts, *inter alia*, that the ALJ erred in failing to find him disabled based on the pain caused by his physical impairments.  Plaintiff

further suggests that the ALJ mis-characterized Plaintiff's daily activities in assessing his credibility.

Significantly, a claimant must present more than his subjective complaints of disabling symptoms. *See* 20 C.F.R. § 404.1529 ("... statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings . . ."); SSR 96-7p ("No symptom or combination of symptoms can be the basis of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."). Contrary to Plaintiff's claim, in evaluating his RFC to perform work-related activities, the ALJ properly considered Plaintiff's subjective complaints, but reasonably found them to be not fully credible. (Tr. 20-25). He discussed all the relevant evidence of record and identified the requisite credibility factors. (*Id.*). The ALJ appropriately noted that the objective data did not support Plaintiff's complaints, and that Plaintiff never had been hospitalized nor sought emergency treatment for this condition, despite its alleged severity. (Tr. 23). Because the ALJ found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of his pain and limitations, it

18

was permissible for the ALJ to discredit Plaintiff's testimony about the severity of his symptoms.

The ALJ also discussed other credibility factors. (*See* Tr. 21-24). Plaintiff, however, complains that the ALJ described his activities in a way that inaccurately overstated his activity level. (Doc. #8 at 19). The record does not support Plaintiff's position. For example, considering Plaintiff's daily activities, the ALJ noted that Plaintiff at various times had indicated that he was able to vacuum, launder, make his bed, shop, drive, and prepare simple meals. (Tr. 24, citing to Tr. 108, 208, 322). Plaintiff also did small repairs, cared for the lawn, read, played computer games, and visited with friends at his home. (Tr. 108-09, 208, 322-24). Plaintiff testified that he could walk 3/4 mile and sit for hours. (Tr. 319-20). In making his credibility finding, the ALJ appropriately considered Plaintiff's own descriptions of engaging in a variety of daily activities. *See Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").

The Commissioner asserts that the ALJ also found Plaintiff not fully credible because he had large gaps in treatment. (Doc. #9 at 13). For example, Plaintiff underwent testing in March 2002, then next saw Dr. Gorsky in March

19

2003, one year later. (Tr. 133, 150). Plaintiff also underwent testing in October 2003, then started to see Dr. Gebhart in February 2004, four months later. This Court agrees that such gaps in treatment tend to undermine Plaintiff's allegations.

As noted above, the issue before this Court is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The record reflects that the ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and reasonably determined that such allegations were not fully credible. The ALJ's credibility finding is entitled to deference, and thus should be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

For his final assignment of error, Plaintiff asserts that the ALJ erred in failing to pose valid hypothetical questions to the VE. Specifically, Plaintiff maintains that the hypothetical questions were improper because they failed to include limitations relating to Plaintiff's need to take four to eight unscheduled restroom breaks per day, with each trip lasting 10 to 15 minutes. (Doc. #8 at 21).

As detailed above, however, the ALJ properly evaluated Plaintiff's RFC. Thus, contrary to Plaintiff's assertion, the hypothetical questions presented to the

20

VE accurately reflected Plaintiff's impairments and limitations as found by the ALJ to be supported by substantial evidence in the record. The ALJ was required to incorporate into his hypothetical questions only those limitations that he accepted as credible. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). The ALJ did not find Plaintiff's complaints of total disability to be credible. Thus, the ALJ was not obliged to incorporate those unsubstantiated complaints. S*ee Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d at 922, 927-28 (6th Cir. 1987).

Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

**IT THEREFORE IS RECOMMENDED THAT:**

1. The ALJ's decision and non-disability determination be AFFIRMED; and

2. The case be TERMINATED on the docket of this Court.

June 9, 2011                                                 s/ Sharon L. Ovington
                                                            Sharon L. Ovington
                                                            United States Magistrate Judge

21

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).